THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY BANKS, Defendant-Appellant.

First District (1st Division)   No. 1—89—1204

Opinion filed March 30, 1992.

Randolph N. Stone, Public Defender, of Chicago (Cheryl K. Lipton and Karen E. Tietz, Assistant Public Defenders, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Guy L. Miller IV, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

In the late evening of November 8, 1987, Chicago police officers sought entry into an apartment in a Cabrini-Green public housing building on Sedgwick Street with a search warrant based on reports that illegal narcotics were being sold from the unit. When entry was refused, the officers forced their way in.

Defendant Rodney Banks was one of five individuals present in the apartment. Subsequently, he was charged under section 401 of the Illinois Controlled Substances Act (Act) with possession of heroin and cocaine with intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, pars. 1401(b)(2), (c)). He was convicted of separate offenses relating to those substances and was sentenced to a prison term of seven years.

We affirm in part, reverse in part, and remand.

At trial, the State established its case against defendant primarily through the testimony of the arresting officers.

Officer Virgil Jones stated that, as he and other officers entered the apartment, defendant and two of the other individuals present, Tony Stearns and Vincent Thurman, were throwing numerous plastic-wrapped items out of a window. The officers recovered several such packages from the floor area by the window where defendant "had moved away from." In court, Jones identified the packages recovered by identifying them as the contents of the police narcotics evidence envelope in which the packets were placed.

Officer Ronald Stieben testified that, from his position at the door of the apartment, he also saw defendant and two other individuals throw several items out of the window. Stieben saw defendant drop similar-looking items to the floor. Stieben variously described what defendant threw out of the window as a package or many packages which were "floating" about.

Officer Merel E. Brown, too, saw defendant throw items out of a window and to the floor. Brown recounted, in detail, the procedure used to inventory the items recovered. Brown stated he, himself, had recovered nine items from the floor where defendant had dropped them, putting them in his pocket to keep them separated from the other items recovered.

At the approximate time the officers forced their entry, Officer Eric Davis, who was positioned outside of the building in an area beneath the windows of the apartment, observed defendant throw a plastic bag to the ground. The bag contained numerous packages containing a brown powder. Davis returned with the bag to the apartment, identifying defendant as the individual he had seen throwing the bag out of the window.

In all, 69 small, sealed, clear plastic packets, containing 9.78 grams of a brown powder, and nine packages, containing 2.7 grams of a white powder, were recovered. Tests performed on samples showed the brown powder to be heroin and the white powder to be cocaine.

The police also recovered $300 in cash from defendant.

In his defense, defendant presented the testimony of Stearns, Thurman, Ladidrea Richmon, and Marva Roland to establish that defendant's presence in the apartment was fabricated by police. The witnesses stated that defendant had actually been forced into the apartment by the police when they entered.

Defendant here argues that he was not proved guilty beyond a reasonable doubt. That argument is primarily based on a contention that the officers' testimony was inconsistent in describing the items recovered. Defendant also argues the evidence failed to establish the requisite intent to deliver the illegal narcotics.

■ We conclude the evidence sufficiently supported a finding of guilt. Although the officers used different terms to describe the recovered items containing heroin and cocaine, the use of varying terms can provide no consolation to defendant. Testimony was provided at trial detailing a proper chain of evidence, and the items about which the State provided testimony were admitted into evidence for the jury's consideration.

■ The elements of the crime of unlawful possession of narcotics with an intent to deliver were established by the testimony of the arresting officers. (See *People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.) Both Jones, who was positioned outside the apartment building, and Stieben, who was with the officers who entered the unit, testified that they saw defendant throw items out of a window. Those items were later determined to contain a controlled substance. Testimony also established that defendant dropped several other similar items to the floor where he was standing. That testimony would permit a rational trier of fact to conclude defendant had knowledge of the presence of illegal narcotics and that illegal narcotics were in defendant's immediate control or possession. (See *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) The element of intent was supported by evidence showing the combination of drugs, the manner they were packaged and kept, and the cash recovered from defendant. See *People v. Marshall* (1988), 165 Ill. App. 3d 968, 521 N.E.2d 538, *appeal denied* (1988), 119 Ill. 2d 567, 522 N.E.2d 1252; *People v. Le-Cour* (1988), 172 Ill. App. 3d 878, 527 N.E.2d 125, *appeal denied* (1988), 123 Ill. 2d 563, 535 N.E.2d 407.

■ Alternatively, defendant argues he cannot stand convicted separately of possession of both heroin and cocaine with the intent to deliver because the convictions arose from the same set of circumstances.

We agree. In *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, our supreme court directed that the simultaneous possession of more than one type of controlled substance constitutes a single act for which there can be but one conviction. The appellate court consistently has applied that rule in cases involving facts similar to those at issue here. (See *People v. Love* (1991), 222 Ill. App. 3d 428, 584 N.E.2d 189.) Therefore, on remand, one of defendant's two convictions for possession of a controlled substance with intent to deliver must be vacated.

Parenthetically, we note that an exception to that rule has been recognized where the particular controlled substances simultaneously possessed give rise to offenses under separate statutory enactments. For example, separate convictions based on the simultaneous possession of a substance containing cannabis and of a substance containing cocaine have been held to be proper because both the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 704) and the Illinois Controlled Substances Act are implicated in the single act of possessing both substances. (*People v. Tovar* (1988), 169 Ill. App. 3d 986, 523 N.E.2d 1178, *appeal denied* (1988), 122 Ill. 2d 590, 530 N.E.2d 260; see also *People v. Morrison* (1988), 178 Ill. App. 3d 76, 532 N.E.2d 1077, *appeal denied* (1989), 126 Ill. 2d 564, 541 N.E.2d 1112.) In those cases, a legislative intent to define the offenses by the nature of the substance possessed is therefore evident.

Although the State finds a similar legislative intent is manifested in the Illinois Controlled Substances Act, itself, by the designation of particular types and amounts of substances covered, we disagree. Enumeration of the different types of substances in the Act serves only to define what is to be considered a controlled substance. It is the conduct of possessing one or more of the substances which gives rise to an offense under the Act. The amounts of the substances designated simply provide a means to classify the type of punishment for that possession. The State's argument, which seeks to have separate offenses under the Act defined by the substance possessed, is more properly directed to the General Assembly, not to the appellate court.

Defendant also complains that certain remarks made by the State, during closing and rebuttal argument, deprived him of a fair trial. Acknowledging his failure to specifically raise that issue in his post-trial motion, defendant nevertheless urges us to consider his argument because, he contends, his counsel was ineffective in that respect.

■ No reason exists to excuse the failure to specifically raise the issue by way of a post-trial motion as required under *People v. Enoch* (1988), 122 Ill. 2d 176, 52 N.E.2d 1124, *cert. denied* (1988), 488 U.S.

917, 102 L. Ed. 2d 263, 109 S. Ct. 274, to preserve the issue for review. Our supreme court has recently reiterated the general rule that the failure to bring a motion or to object to portions of closing arguments does not establish incompetent representation. (*People v. Pecoraro* (1991), 144 Ill. 2d 1, 578 N.E.2d 942.) For those reasons, we decline to disturb defendant's convictions with regard to comments made by the State.

Affirmed in part; reversed in part and remanded.

BUCKLEY, P.J., and CAMPBELL, J., concur.